# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
Filed: January 6, 2022

| | | |
|---|---|---|
| * * * * * * * * * * * | | |
| PAULA BEYERL, | * | UNPUBLISHED |
| | * | |
| Petitioner, | * | No. 20-32V |
| | * | |
| v. | * | Special Master Dorsey |
| | * | |
| SECRETARY OF HEALTH | * | Dismissal Decision; Failure to Prosecute; |
| AND HUMAN SERVICES, | * | Insufficient Proof. |
| | * | |
| Respondent. | * | |
| | * | |
| * * * * * * * * * * * | | |

Paula Beyerl, pro se, Leesburg, VA, for petitioner.
Claudia B. Gangi, U.S. Department of Justice, Washington, DC, for respondent.

### DECISION[1]

**I.   INTRODUCTION**

On January 10, 2020, Paula Beyerl ("petitioner") filed a petition, pro se, pursuant to the National Vaccine Injury Compensation Program ("Vaccine Act" or "the Program"), 42 U.S.C. § 300aa-10 et seq. (2012).[2]  Petitioner alleged that that she developed coronary artery spasms as the result of an influenza ("flu") vaccination administered to her on January 10, 2017.   Petition at Preamble (ECF No. 1).   Petitioner subsequently retained legal counsel and filed an amended petition on December 2, 2020, alleging that she suffered pericarditis, coronary artery spasms,

---

[1] Because this Decision contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002.   44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services).  **This means the Decision will be available to anyone with access to the Internet.**   In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy.   If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-10 to -34 (2012).   All citations in this Decision to individual sections of the Vaccine Act are to 42 U.S.C. § 300aa.

1

angina, paroxysmal supraventricular tachycardia ("PSTV"), temporary atrial fibrillation ("AFib") and/or chest pain, resulting from the adverse effects of the flu vaccination administered on January 10, 2017.   Amended ("Am.") Petition at 1 (ECF No. 41).

Based on all the reasons set forth below and in the Show Cause Order dated July 13, 2021, and for failure to comply with the Show Cause Order, the undersigned dismisses this case for failure to prosecute and insufficient proof.   Order to Show Cause dated July 13, 2021 (ECF No. 57).

## II.   PROCEDURAL HISTORY

Petitioner filed her claim, pro se, on January 10, 2020, alleging she developed coronary artery spasms as the result of a flu vaccination administered to her on January 10, 2017.   Petition at Preamble.   The case was assigned to the undersigned on January 15, 2020.   Order Reassigning Case dated Jan. 15, 2020 (ECF No. 8).   The undersigned held an initial status conference on February 25, 2020 and requested petitioner file medical records to support her claim.   See Order dated Feb. 26, 2020 (ECF No. 15).

Petitioner subsequently retained legal counsel on September 9, 2020.   Motion ("Mot.") to Substitute Attorney, filed Sept. 10, 2020 (ECF No. 31).   In October through December 2020, petitioner filed medical records, an affidavit, an amended petition, and a statement of completion.   Petitioner's Exhibits ("Pet. Exs.") 1-13; Am. Petition; Statement of Completion, filed Dec. 2, 2020 (ECF No. 43).

On February 10, 2021, petitioner filed additional medical records.   Pet. Ex. 14. Respondent filed respondent's Rule 4(c) Report recommending against compensation on March 10, 2021.   Respondent's Report ("Resp. Rept.") at 2 (ECF No. 49).   The undersigned held a status conference on April 27, 2021, to discuss next steps in the case and ordered petitioner to file additional medical records and for the parties to schedule a Rule 5 conference.   See Order dated Apr. 28, 2021 (ECF No. 50).   Petitioner filed additional medical records on April 30, 2021.   Pet. Ex. 15.

The undersigned held a Rule 5 conference on May 13, 2021.   Rule 5 Order dated May 13, 2021 (ECF No. 52).   The undersigned provided a summary of petitioner's medical records and found "[p]etitioner's relevant medical history, three years prior to vaccination, is significant for prior complaints and treatment for chest pain."   Id. at 1-3.   The undersigned preliminary findings were

> the petitioner has failed to establish that she suffered any heart condition, or other compensable injury, related to the flu vaccine administered on January 10, 2017. In order to pursue this case, petitioner would need to file an expert report to provide preponderant evidence that there was some injury related to her flu vaccination and that the injury lasted longer than six months.

Id. at 4.   The undersigned ordered petitioner to file an expert report in sixty days or an Order to Show Cause would issue.   Id.

2

In July 2021, petitioner filed medical records and a motion to withdraw attorney and continue pro se.  Pet. Exs. 16-17; Mot. to Withdraw as Attorney, filed July 7, 2021 (ECF No. 56).  The motion to withdraw was granted.  Order dated Aug. 31, 2021 (ECF No. 62).  Petitioner did not file an expert report and the undersigned issued an Order to Show Cause.  Order to Show Cause.  The Order to Show Cause ordered petitioner to file an expert report by September 13, 2021, or the case would be dismissed.  Id. at 2.  "Failure to file the requested expert report will be interpreted as an inability to provide supporting documentation for this claim, constituting a failure to prosecute, and the case will be dismissed with prejudice."  Id.

Petitioner contacted the undersigned's Chambers and requested an extension to file an expert report on September 9, 2021, which the undersigned granted.  See Order dated Sept. 13, 2021 (ECF No. 65).  The petitioner then missed her deadline to file an expert report on November 12, 2021, and the undersigned extended the deadline an additional thirty days.  Order dated Nov. 16, 2021 (ECF No. 68).  Petitioner subsequently missed her December 13, 2021 deadline to file an expert report.

This matter is now ripe for adjudication.

## III. FACTUAL SUMMARY

### A. Pre-Vaccination Medical History

On July 26, 2014, petitioner sought emergency treatment for hypertension and chest pain.  Pet. Ex. 1 at 22.  Her electrocardiogram ("EKG") and cardiac monitoring revealed normal results.  Id. at 28.  Diagnosis was gastroesophageal reflux disease, hiatal hernia,[3] and costochondritis.[4]  Id. at 36-40; Pet. Ex. 2 at 22, 32.  In the emergency room, petitioner was seen by Dr. Mark P. Tanenbaum who noted, "I suspect her discomfort is from a non-cardiac etiology."  Pet. Ex. 1 at 39.  On July 27, 2014, she followed up with cardiologist Dr. Tanenbaum, who noted the following history:

> [Petitioner] is a 46-year-old woman who presents for evaluation of chest

---

[3] Hiatal hernia is the "abnormal protrusion of an organ or other body structure through a defect or natural opening in a covering, membrane, muscle, or bone of an abdominal organ," "usually the stomach, through the esophageal hiatus into the respiratory diaphragm."  Hiatal Hernia, Dorland's Online Med. Dictionary, https://www.dorlandsonline.com/dorland/definition?id=80713&searchterm=hiatal%20hernia (last visited Jan. 5, 2022); Herniation, Dorland's Online Med. Dictionary, https://www.dorlandsonline.com/dorland/definition?id=22340&searchterm=herniation (last visited Jan. 5, 2022).

[4] Costochondritis is the inflammation of the cartilaginous junction between a rib or ribs and the sternum.  Costochondritis, Dorland's Online Med. Dictionary, https://www.dorlandsonline.com/dorland/definition?id=11357&searchterm=costochondritis (last visited Jan. 5, 2022).

3

>discomfort.   She states she was in [her] usual state of health until 5 days ago when while at work, she noted onset of chest discomfort.   She described it as a deep pressure-like sensation, did not change with activity.   She continued to do her normal activities. . . .   She continued with chest discomfort 2 days ago while at work and states she went to an urgent care center where she was told that she probably had costochondritis and [was] discharged home.   She still had discomfort that evening and yesterday continued discomfort throughout the day.   She decided to come to the emergency room for further evaluation and cardiology consultation is requested. . . .   Cardiac history dates back to August of 2008 when she was admitted to the hospital with chest discomfort.   Echocardiogram at that time was normal.   She underwent an exercise nuclear perfusion study on August 12, 2008, noting normal myocardial perfusion.

Pet. Ex. 2 at 22-23.   Her current medications that day were nitroglycerin, metoprolol, Zofran, and Lipitor.   Id. at 23.   There were no abnormalities in her physical exam, and an EKG and chest x-ray were both normal, as were all of the lab results.   Id. at 23-24.   Dr. Tanenbaum repeated he suspected that "her discomfort [wa]s from a noncardiac etiology," but requested a stress echocardiogram.   Id. at 24.   Petitioner had the echocardiogram the following day, July 28, 2014, and the results were unremarkable.   Id. at 2, 10-11.

On July 4, 2015, petitioner sought emergency care from Kaiser Permanente for chest pain.   Pet. Ex. 3 at 43-69.   She complained of left-sided chest pain she described as "burning to crushing 10/10 constant."   Id. at 45.   She also had transient tingling in her left hand.   Id.   Her work-up was normal and the assessment was chest pain, "[symptoms consistent with] musculoskeletal etiology . . . Had similar episode 1yr ago but did not [follow up] for stress test."   Id. at 63.   "Similar episode last year told costochondritis."   Id. at 72.   She was discharged home with a strong recommendation for follow-up.   Id. at 63.

The following day, July 5, 2015, petitioner presented to INOVA Loudoun Hospital with chest pain.   Pet. Ex. 5-1 at 82.   She was placed on a cardiac monitor and her EKG was normal.   Id. at 21.   She also had a CT angiogram that was negative for a pulmonary embolism.   Id. at 19-20.   She was discharged on July 6, 2015, with diagnoses of costochondritis, Tietze's disease,[5] hypertension, and an abnormal coagulation profile.   Id. at 2, 48.

### B.     Post-Vaccination Medical Care

On January 10, 2017, petitioner received a flu vaccine in her left deltoid.   Pet. Ex. 15 at 1.   That same day she presented to Dr. Melissa Matthews, at Kaiser Permanente with complaints of an allergic reaction.   Pet. Ex. 3 at 180.   Petitioner stated that about one hour after receiving a flu shot earlier that afternoon, she developed throat tightening.   Id.   She took two Benadryl per

---

[5] Tietze syndrome is the "idiopathic painful nonsuppurative swellings of one or more costal cartilages, especially of the second rib; the anterior chest pain may mimic that of coronary artery disease."   Tietze Syndrome, Dorland's Online Med. Dictionary, https://www.dorlandsonline.com/dorland/definition?id=111518&searchterm=Tietze%20syndrome (last visited Jan. 5, 2022).

4

instructions from the Kaiser Permanente nurse, and the throat tightening improved.  Id.  She had no shortness of breath, rash, cough, or difficulty swallowing.  Id.  She also stated that she had never had a reaction to previous flu vaccinations, but she did have a similar reaction to Lisinopril.  Id.  Dr. Matthews treated petitioner with one intramuscular injection of epinephrine and intravenous Solumedrol.  Pet. Ex. 15 at 13.  Petitioner's symptoms improved but she had ongoing intermittent mild sensations of throat tightening.  Pet. Ex. 3 at 182.  Dr. Matthews was "suspicious this may be more anxiety than an allergic reaction."  Id.

Petitioner received emergency care for chest pain on January 12 and 13, 2017, at the INOVA Loudoun Hospital and Reston Hospital, respectively.  Pet. Ex. 5-1 at 96-123; Pet. Ex. 6 at 911, 947-49.  She reported that she was very anxious.  Pet. Ex. 6 at 911.  On January 13, she was brought to Kaiser Permanente via ambulance with a history of non-radiating left-sided chest pain for two days.  Pet. Ex. 3 at 198.  "Of note, [patient] reports she had an allergic reaction to (throat swelling and tightness) flu shot she received a few days ago and was treated with epi.  States she has had diarrhea since."  Id.  Dr. Albert Cheung documented, "[t]he chest pain seems to be elicited on palpation at the left costochondral junction consistently."  Id. at 199.  Dr. Cheung performed several labs and an EKG and assessed petitioner with "[n]o acute cardiopulmonary disease."  Id. at 201-03.  A repeat EKG was similar to the EKG in 2015.  Id. at 204.

Dr. James Hollis interviewed and examined petitioner before approving discharge.  Pet. Ex. 3 at 205.  He noted she received Toradol and felt "a little better."  Id.  She rated her pain "10/10 but was resting comfortabl[y] and walking in halls with no obvious discomfort.  Also making jokes and laughing."  Id.  Diagnosis was "atypical chest pain likely costochondritis."  Id. at 206.  She was discharged with recommendations for rest, ice, or heat if they provided relief of her symptoms, scheduled naproxen, Tylenol and Tramadol as needed.  Id.

Petitioner continued to seek emergency care for chest pain on multiple occasions throughout 2017, and continued to report that her chest pain began in January after she received her flu vaccine.  Multiple repeat work ups were negative, repeat EKGs were unremarkable, and the diagnosis remained costochondritis.  See, e.g., Pet. Ex. 1 at 190, 217, 272; Pet. Ex. 3 at 233-34, 278, 296, 329-38, 400, 403, 634-37, 648-70, 767, 774-76; 791-812, 824, 839; Pet. Ex. 5-1 at 305-81, 400; Pet. Ex. 6-9 at 347; Pet. Ex. 6-17 at 681; Pet. Ex. 6-22 at 868-70.  On December 11, 2017, petitioner's past medical history included "coronary artery *spasms per patient-not confirmed by cardiology*."  Pet. Ex. 1 at 284.  Additional diagnoses in December 2017 were pericarditis[6] and transient ischemic attack ("TIA").  Id.

In July 2017, she was treated for reactive pericarditis "possibly related to the allergic reaction after flu shot."  Pet. Ex. 3 at 766.  However, a subsequent echocardiogram in May

---

[6] Pericarditis is inflammation of the pericardium, the fibrous sac surrounding the heart.  Pericarditis, Dorland's Online Med. Dictionary, https://www.dorlandsonline.com/dorland/definition?id=37749&searchterm=pericarditis (last visited Jan. 5, 2022); Pericardium, Dorland's Online Med. Dictionary, https://www.dorlandsonline.com/dorland/definition?id=37750&searchterm=pericardium (last visited Jan. 5, 2022).

2018 showed no evidence of pericarditis.  Pet. Ex. 2 at 20.

On August 29, 2017, petitioner visited cardiologist Dr. Joseph Kiernan, at Virginia Heart for follow up of chest pain.  Pet. Ex. 2 at 5.  Dr. Kiernan documented,

> [Petitioner] is a 49-year-old female who is a consult to the office, referred by Dr. Benson Yu, for an evaluation of her persistent severe chest discomfort.  She first noticed her left-sided chest pain several hours after receiving the flu shot in January.  At that time, a cardiac evaluation was performed by her Kaiser doctors and her treadmill stress test was reportedly unremarkable.  She is currently undergoing cardiac monitoring with a Zio patch.  Subsequently, [petitioner] has noted eight episodes since the initial episode, lasting from one hour to all day.  Less frequently, [petitioner] has experienced a severe central chest pressure.  Over the past month, she reports that her symptoms have become more frequent, now occurring daily.  She does not associate any triggers with her symptoms. . . .  She does not smoke and her history is remarkable for atrial fibrillation, hypertension, Tietze syndrome, and a hiatal hernia.  She has a family history of atrial fibrillation and stroke.

Id.  Following examination, Dr. Kiernan's impression was "Chest pain.  Her recurring episodes of chest pain over the past several months appear very atypical of angina."  Id. at 7.  He also noted petitioner's previously documented hiatal hernia and esophagitis, "so esophageal spasm may well be the underlying cause.  Some features of her discomfort are also suggestive of chest wall pain.  She would appear to have a lower likelihood of significant coronary disease in the absence of risk factors other than hypertension."  Id.  Dr. Kiernan referred petitioner to a gastrointestinal specialist.  Id.

On March 20, 2019, petitioner visited cardiologist Dr. Nadim Geloo, at Virginia Heart "to discuss her diagnosis of coronary artery spasm."  Pet. Ex. 2 at 3.  Dr. Geloo noted that petitioner "apparently was told that she has coronary artery spasm.  This first came to attention when she received a flu shot and got chest pain."  Id.  Petitioner reported she had continued intermittent episodes of chest pain and her physician and a cardiologist at Kaiser Permanente stated that "she might have coronary artery spasm and therapy was initiated . . . with amlodipine, beta blocker and isosorbide mononitrate."  Id.  Following evaluation, Dr. Geloo's impression was "[a]typical chest discomfort - she has previously been evaluated and there was some concern about coronary artery spasm, however, it is not clear to me that she actually has spasm.  Regardless, she is on therapy for this."  Id. at 4.  Under "Recommendation," Dr. Geloo stated that he was "not convinced that the patient truly ha[d] coronary artery spasm."  Id.  Petitioner asked for a prescription for Ativan and Dr. Geloo deferred this request to her primary care provider or a pain specialist.  Id.

On January 21, 2020, petitioner returned to Virginia Heart for evaluation of hypertension and recurrent chest pain.  Pet. Ex. 2 at 1.  Her allergy list included "Fluzone, irregular heart rate," and nitrates was listed as medication for chest pain.  Id.  Cardiologist, Dr. Subash B. Bazaz, wrote,

6

> She apparently has a history of chest pain felt to be due to coronary spasm. This occurred initially after she received a flu shot and developed what sounds like a severe inflammatory reaction which included chest pain, possible pericarditis, and what she describes as a fib. She was seen by a cardiologist at Kaiser and it was felt she might have had coronary vasospasm. She did bring it to my attention that Ativan in the past has worked very well for controlling her chest pain.

Id. Petitioner's physical exam was normal, and an echocardiogram performed that day was "within normal limits." Id. at 2. Dr. Bazaz's main impression was

> [c]hest pain with prior diagnosis of coronary vasospasm. Starting seemingly after a flu shot. Uncertain at this point if her chest pain is related to continued coronary vasospasm or not. I did tell [petitioner] that it can be very difficult to diagnose whether chest pain is truly due to vasospasm or other etiologies.

Id. Dr. Bazaz prescribed translingual nitroglycerin up to three times per day as needed for chest pain. Id. He also ordered a stress test "to rule out any structural heart issues with the heart." Id. Finally, he told the petitioner that the fact that Ativan works well with her chest pain "raises the issue of whether there is a muscular component to her chest pain symptom or perhaps even an element of anxiety." Id.

### IV. ANALYSIS

When a petitioner fails to comply with Court orders to prosecute her case, the Court may dismiss the case. Sapharas v. Sec'y of Health & Hum. Servs., 35 Fed. Cl. 503 (1996); Tsekouras v. Sec'y of Health & Hum. Servs., 26 Cl. Ct. 439 (1992), aff'd, 991 F.2d 819 (Fed. Cir. 1993); Vaccine Rule 21(c); see also Claude E. Atkins Enters., Inc. v. United States, 889 F.2d 1180, 1183 (Fed. Cir. 1990) (affirming dismissal of case for failure to prosecute for counsel's failure to submit pre-trial memorandum); Adkins v. United States, 816 F.2d 1580, 1583 (Fed. Cir. 1987) (affirming dismissal of cases for failure of party to respond to discovery requests). Petitioner's failure to file an expert report indicates a disinterest in pursuing her claim. Thus, the undersigned finds it appropriate to dismiss this case for failure to prosecute.

Additionally, to receive compensation under the Act, a petitioner must prove either (1) that she suffered a "Table Injury"—i.e., an injury falling within the Vaccine Injury Table—corresponding to one of her vaccinations, or (2) that she suffered an injury that was actually caused by a vaccine. See §§ 11(c)(1), 13(a)(1)(A).

Here, a review of the records does not show that the petitioner suffered any heart condition, or other compensable injury, related to the flu vaccine administered on January 10 2017. Petitioner had a previous history of chest pain prior to the flu vaccine dating back to 2008 and 2009. The chest pain was diagnosed as costochondritis. After receiving the vaccine, petitioner reported that her throat tightened and that she had a similar reaction to lisinopril in the past. Petitioner was treated with Benadryl, epinephrine, and Solumedrol, and she improved. She was discharged home on the evening of her vaccination. There is no evidence of permanent injury related to that episode of throat tightening and/or allergic reaction.

7

On January 12 and 13, 2017, petitioner sought treatment for chest pain. She was evaluated by two different ER physicians and had several EKGs, all assessed as normal, with no significant changes from an EKG done in 2015. She had two or three sets of cardiac enzymes drawn, which were all normal and did not show any evidence of heart ischemia or coronary artery disease. All of the physicians who saw petitioner on those two days concluded that her chest pain was not acute coronary syndrome or angina, and she was discharged home. The chest pain was thought to be costochondritis. Additionally, petitioner was worked up for pericarditis and that condition was ruled out. The petitioner has failed to submit expert opinion that provides evidence of any vaccine related condition or illness arising from petitioner's admissions in January 2017.

Two years after the vaccination at issue there is a reference to coronary artery spasms. There is no evidence in the records that establish that petitioner underwent a cardiac catheterization, an angiogram, or other diagnostic study that showed evidence of coronary artery spasm. However, the records suggest that she was told she might have coronary artery spasms. Assuming that petitioner did have coronary artery spasms, the petitioner has failed to provide any expert opinion which shows that the condition was caused by her flu vaccine.

Without an expert report providing evidence of vaccine causation, the undersigned finds that the record does not support a claim under the Vaccine Act, or otherwise include preponderant evidence demonstrating that petitioner sustained any vaccine injury.

The undersigned expresses her sympathy for petitioner, and for the pain and suffering that she has experienced, but unfortunately the case cannot proceed without proof of causation.

**Thus, this case is dismissed for failure to prosecute and for insufficient proof.** The Clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**

<u>s/Nora Beth Dorsey</u>
Nora Beth Dorsey
Special Master